**Beryl KLECKNER, Appellant,**

v.

**Gene McCLURE et al., Appellees.**

**No. 17624.**

Court of Civil Appeals of Texas, Fort Worth.

June 13, 1975.

**610**

Nobles & Duncan and M. P. Duncan, III, Decatur, for appellant.

W. B. Woodruff, Jr., Decatur, for appellee Gene McClure.

John L. Hill, Atty. Gen. of Texas, and J. Arthur Sandlin, Asst. Atty. Gen., Austin, for Veterans' Land Board of the State of Texas.

OPINION

BREWSTER, Justice.

This trespass to try title suit was filed by the plaintiff, Beryl Kleckner, against the defendants, Veterans Land Board of the State of Texas and Gene McClure, on March 26, 1973. The trial was to a jury. Two issues were submitted inquiring whether the plaintiff and those under whom he claimed, either in person or through tenants, had held exclusive, peaceable and adverse possession of the land in dispute, cultivating, using or enjoying same for a period of more than 10 years or for a period of more than 25 years prior to March 26, 1973. The jury answered both of those issues in plaintiff's favor. The defendants' motion for a judgment notwithstanding the verdict was granted by the trial court. Judgment was rendered decreeing that plaintiff take nothing by his suit against the two defendants, and this appeal is taken by the plaintiff from that decree.

We affirm.

The parties stipulated: (1) that plaintiff owned the record title to an 80 acre tract which was a part of Block 30 of the Bell County School Land Survey, Abstract No. 27 in Wise County, Texas; (2) he acquired this land through two deeds, one such being from Estha Smith and others, to him and his wife dated November 22, 1967, and the other deed being from Vilie Inez Patton, et al., to him and his wife dated August 18, 1967; (3) the defendant, Veterans Land Board, owned the record title to another 80 acre tract that is a part of Block 19 of the Bell County School Land, Abstract 27, in Wise County, Texas, by virtue of a deed dated September 11, 1969, from William Covington, Jr., individually and as independent executor of the estate of William Covington, deceased; and (4) that Gene McClure owned the equitable title to this last mentioned tract by virtue of a contract of sale entered into between him and the Veterans Land Board.

The parties also stipulated that Blocks 30 and 19 of the Bell County School lands in Wise County are adjacent blocks and that the defendants owned no record title to any part of Block 30 and that the plaintiff, Kleckner, owned no record title to any part of Block 19.

The record, without dispute, showed that the plaintiff's 80 acre tract and the defendants' 80 acre tract were adjacent. The land in controversy was a strip 60 feet wide lying wholly within and being a part of the defendants' 80 acre tract and running the entire length of the common boundary line between the plaintiff's and defendants' 80 acre tracts. The 60 foot strip was the part of defendants' land that lay immediately adjacent to the plaintiff's 80 acre tract.

Since the parties had stipulated that plaintiff owned no part of the record title to the strip of land in dispute, his right to recover title thereto hinged on whether or not he had introduced evidence that would create a fact issue as to whether or not he had acquired limitation title to that strip under either the 10 or 25 year Statutes of Limitation.

The undisputed evidence showed that plaintiff had not personally held adverse possession of the land in dispute for as long as 10 years because he did not buy his 80 acre tract until 1967 and he did not even come into the area until after he purchased his 80 acre tract. This suit was filed in March, 1973.

■ The question involved in this case is thus further narrowed down to whether the plaintiff and another or others with whom he can show privity of possession together held exclusive, peaceable and adverse possession of the tract involved continuously throughout the entire statutory limitation period. If he could make that showing then those successive periods of adverse possession can be tacked or added together in order to get the entire statutory limitation period. The limitation title would, under those circumstances, ripen into and become

vested in the adverse possessor that had possession at the time the statutory limitation period expired. Art. 5516, Vernon's Ann.Civ.St., and Philadelphia Trust Co. v. Johnson, 257 S.W. 280 (Beaumont Tex.Civ. App., 1923, writ dism.).

Plaintiff's only point of error is that the trial court abused its discretion by granting defendants' motion for judgment notwithstanding the verdict and in rendering judgment against plaintiff because there was probative evidence presented to support the jury's verdict in favor of plaintiff.

We overrule that point.

Grounds E and F of defendants' motion for judgment notwithstanding the verdict were as follows:

"E. Plaintiff failed to introduce any evidence of a continuous claim of title by Plaintiff or his predecessors in title to the property claimed by Plaintiff herein. Judgment should therefore be entered in favor of Defendant.

"F. Plaintiff failed to introduce evidence of a continuous claim of title by Plaintiff or his predecessors in title to the property claimed by Plaintiff herein, sufficient to perfect limitations title under any law of this State."

We hold that both of those grounds of that motion were properly granted by the trial court for the reasons hereinafter set out.

■ The 25 year limitation statutes have no application to the facts of this case. Before Art. 5519, V.A.C.S. can apply, the claimant must be claiming under a deed or instruments conveying the land to him that are recorded in the deed records. Here plaintiff is not claiming the disputed tract under any recorded instruments. Pinchback v. Hockless, 138 Tex. 306, 158 S.W.2d 997 (Com.App., 1942, opn. adp.).

Article 5519a, V.A.C.S. does not apply in this case because no effort was made to prove that plaintiff or those under whom he

claims had paid the taxes on the disputed property as is required by that statute. Pagel v. Pumphrey, 204 S.W.2d 58 (San Antonio Tex.Civ.App., 1947, ref., n. r. e.), and Purnell v. Gulihur, 339 S.W.2d 86 (El Paso Tex.Civ.App., 1960, ref., n. r. e.).

The undisputed evidence shows the following: at one time an old county road was located wholly on defendants' 80 acre tract; fences were on each side of the road; the road ran from a northwesterly to a southeasterly direction at a 45 degree angle, as did the boundary line between the plaintiff's and defendants' 80 acre tracts; the fence on the northeasterly side of the roadway was located parallel to the roadway, wholly on defendants' 80 acre tract, on a line that was parallel to and 60 feet from the boundary line between plaintiff's and defendants' tracts; this situation resulted in a strip 60 feet wide out of defendants' 80 acre tract being cut off from the rest of defendants' 80 acres, with a road lying between it and the rest of the defendants' 80 acres; as stated, this 60 foot wide strip lay adjacent to the boundary line between plaintiff's and defendants' 80 acre tracts, and it was located wholly within defendants' 80 acre tract; the evidence showed that for many years after 1907 this strip in dispute was farmed along with the plaintiff's 80 acres by the people in possession of plaintiff's 80 acres; not long after 1945 this old roadway was abandoned and the fence that lay along the southwesterly side of the road was allowed to deteriorate; the defendants in about 1969 acquired their 80 acres by deed from William Covington, Jr., individually and as independent executor of the estate of William Covington, deceased; William Covington for many years prior to 1969 was the record owner of 1700 acres of land located in this area, which 1700 acres included the defendants' 80 acres and the land that is in dispute; Covington ran a ranching operation on this land; for many years prior to and continuing up to the time plaintiff bought his 80 acre tract in 1967, Covington had a grass lease on the plaintiff's 80 acre tract from the prior owners of that land and he had the actual possession of that 80 acres during all the period that he had that land leased and he used it for grazing in connection with his ranching operation; during all that period of time that Covington had the 80 acres now owned by plaintiff leased he also had the actual possession of the strip of land that is in controversy; for those many years he grazed cattle on all of his 1700 acres, including the 60 foot strip of land that is in dispute and including the plaintiff's 80 acre tract; the fence along the southwesterly side of the old roadway had been allowed to disintegrate and the fence along the other side of that roadway had gaps in it through which Covington's cattle passed freely to graze as they pleased on both 80 acre tracts involved here, including the strip in dispute; after the plaintiff purchased his 80 acre tract in 1967 he continued to lease to Covington that tract for $80.00 a year for a period of about 3 years and during that first 3 year period of plaintiff's ownership of the 80 acres, the man having the actual posession of plaintiff's 80 acre tract and of the land in dispute was this William Covington who, without dispute, was also the owner of the record title to the land in controversy.

In other words the undisputed evidence showed that the man that had the actual possession of the disputed tract for many years just preceding plaintiff's acquisition of his 80 acre tract in 1967 was the record owner of that land, William Covington. It was also undisputed that William Covington, the record owner of the disputed strip, also had the actual possession of that disputed strip for the first 3 years following the time plaintiff acquired his 80 acres in 1967.

The law applicable to the situation before us is set out in the case of Riddle v. Vandiver, 225 S.W.2d 460 (Texarkana Tex.Civ. App., 1949, no writ hist.) as follows: " 'To be effective as a means of acquiring title, the possession of an adverse claimant must

be exclusive of the true owner. The owner must be wholly excluded from possession by claimant. Any sort of joint or common possession by claimant and the owner or a tenant of the owner prevents the possession of claimant from having the requisite quality of exclusiveness. In these circumstances, the law referred the possession to the person having the legal title.'"

■ The following cases also hold that in order to result in title by adverse possession, the possession by the limitation claimants must wholly exclude the record owners of the property: Wicks v. Langford, 320 S.W.2d 707 (Eastland Tex.Civ.App., 1959, no writ hist.); Rick v. Grubbs, 147 Tex. 267, 214 S.W.2d 925 (1948); Hardeman v. Mitchell, 444 S.W.2d 651 (Tyler Tex.Civ.App., 1969, no writ hist.), and Petty v. Dunn, 419 S.W.2d 417 (Tyler Tex.Civ.App., 1967, ref., n. r. e.). And to the same effect see 2 C.J.S. Adverse Possession § 55, p. 728.

■ The burden of proof is on one claiming title by adverse possession to prove every fact essential to his claim. Burnett v. Knight, 428 S.W.2d 470 (Dallas Tex.Civ. App., 1968, ref., n. r. e.).

■ No presumptions will be indulged in favor of a party claiming adversely under a limitation statute. Riddle v. Vandiver, 225 S.W.2d 460 (Texarkana Tex.Civ.App., 1949, no writ hist.).

■ The undisputed evidence in this case shows that plaintiff did not have exclusive adverse possession of the disputed tract for the first 3 years immediately following his acquisition of his 80 acres in 1967, because during that period Mr. William Covington, the owner of the record title to the disputed tract was in actual possession of it. This being true, the undisputed evidence showed that the plaintiff did not have exclusive adverse possession of the disputed tract for any period of time at all that could be tacked onto a prior period of exclusive adverse possession held by one of his predecessors in title with whom he was in privity, so as to give them together a period of continuous, exclusive, adverse possession for the limitation period.

In addition, the undisputed evidence shows that for many years prior to the time plaintiff came on the scene in 1967 Mr. Covington, the record owner of the disputed tract, had the actual possession of that tract, grazing his cattle on it during all that time.

Under these circumstances the undisputed evidence showed that none of plaintiff's predecessors had held exclusive adverse possession of the disputed tract for any period of time on to which plaintiff could have legally tacked, and that there has been no continuous, exclusive, peaceable period of adverse possession of the disputed tract by plaintiff and his predecessors for a period of as much as 10 years that has ripened into a limitation title for the plaintiff since he came on the scene in 1967.

■ The plaintiff's burden in the case was to show that he owned the title to the land in dispute. He did not meet this burden. Even if limitation title had matured in one or more of plaintiff's predecessors prior to the time the plaintiff came on the scene in 1967, that fact would be of no benefit in this case to the plaintiff. If that had occurred the limitation title would still be in that predecessor, because the plaintiff has no written conveyance from him conveying the land in dispute to plaintiff. A limitation title cannot be transferred or conveyed orally any more than can a record title be conveyed orally. A verbal transfer of such a title is wholly ineffectual. See Art. 1288, V.A.C.S., Bridges v. Johnson, 69 Tex. 714, 7 S.W. 506 (1888); Reeves v. Houston Oil Co. of Texas, 230 S.W.2d 255 (Beaumont Tex.Civ.App., 1950, ref., n. r. e.), and Hurr v. Hildebrand, 388 S.W.2d 284 (Houston Tex.Civ.App., 1965, ref., n. r. e.).

In saying what we have said in the last paragraph above, we recognize that where one seeks to merely tack one period of

adverse possession that is short of the statutory limitation period onto another (in instances where two adverse possessors are in privity with each other) in order to show adverse possession for one entire limitation period that a deed is not necessary in order to transfer that possessory right. 2 T.J.2d 156, Adverse Possession, Sec. 75, and Sterling v. Tarvin, 456 S.W.2d 529 (Fort Worth Tex.Civ.App., 1970, ref., n. r. e.). But once the limitation period has expired and limitation title has ripened or matured in the adverse possessor, it thereafter takes a deed in order to transfer the title that the adverse possessor acquired by limitations. Article 1288, V.A.C.S.

In addition to what we have said above, the record before us shows other deficiencies in the proof.

The plaintiff offered no evidence to show a privity of estate between him and those whose periods of adverse possession he seeks to have tacked onto his own. It was necessary in order for him to prove his case to make that proof. Rushing v. Lanier, 63 Tex.Civ.App. 40, 132 S.W. 528 (1910, writ ref.); Jakovich v. Nass, 185 S.W.2d 473 (Galveston Tex.Civ.App., 1945, no writ hist.), and Abramson v. Sullivan, 103 S.W.2d 229 (Austin Tex.Civ.App., 1937, no writ hist.).

In this connection, the parties stipulated that by virtue of two 1967 deeds the plaintiff became the owner of his 80 acre tract. There was no proof of the length of time that plaintiff's grantors owned their 80 acre tract and there was no evidence offered tending to show that they were ever in actual possession of the 80 acre tract or of the land in dispute. There was no evidence offered to show that they or any of plaintiff's predecessors ever made any claim to the disputed tract that was hostile to and exclusive of the owner's right to possession. The plaintiff himself testified that the record owner of the disputed strip had actual possession of it and of plaintiff's 80 acres for many years prior to 1967. No

evidence was offered to show any of the following: who plaintiff's predecessors were; whether they ever had possession of the disputed tract, and if so, for how long; whether they were in privity with plaintiff and his vendors; and whether they ever made a claim to the disputed tract that was hostile to the owner.

The judgment is affirmed.