BREWSTER, J., joins in this opinion.

## STUBBS v. CLEMENTS.

### No. 15529.

Court of Civil Appeals of Texas.

Fort Worth.

June 25, 1954.

J. Elwood Winters, and Ernest May, both of Fort Worth, for appellant.

802

Richard Owens, of Fort Worth, for appellee.

RENFRO, Justice.

Suit was brought by Lee Stubbs against Byron Clements in trespass to try title to the east one-half of Lot "O", Block 2, West Handley, Tarrant County, Texas, claiming title under the ten year statute of limitation. Vernon's Ann.Civ.St. art. 5510. The case was tried before the court without a jury and judgment entered for Clements.

Appellant Stubbs owns a tourist court located on Lots 1, 2, 3 and 4, Block 2. Lot O joins Lot 1 on the west.

Appellee Clements has record title through mesne conveyances, dating back to Wm. D. Weiler on October 25, 1911, to all of Lot O.

Appellant's claim of title is based on the following: On May 19, 1936, Mattie Mae Mount et vir. conveyed to Walter Cameron et ux. Lots 1, 2 and 3 in Block 2 of West Handley Addition, "together with any and all property adjacent thereto now held by us under fence." On July 1, 1940, Wm. D. Weiler et al. executed a quitclaim deed to Walter Cameron et ux., conveying, among other property not here involved, "a part of Lot O, Block 2, West Handley." On November 26, 1943, Cameron and wife executed a deed to J. W. Purser et ux., conveying Lots O, 1, 2, 3, 4, 5, and 6 in Block 2, save and except as to Lot O, wherein the deed stated: "It is distinctly understood that the grantors only quit-claim their interest unto the grantees herein as to Lot 'O' Block 2, West Handley, Tarrant County, Texas, and same is sold subject to any taxes that may be owing against said premises." J. W. Purser et ux. executed a deed to Fred M. Harrow et ux. on May 9, 1944, with the same recitals as in the deed from Cameron to Purser. Harrow and wife, on June 6, 1945, executed a deed to Ellis Hiett and Walter Jones, with the same recitals. On January 2, 1946, Hiett and Jones executed a warranty deed to William Madden and wife to all the property described in the preceding deeds. Madden in turn, by warranty deed, conveyed the property to O. C. Mays on March 15, 1946. On October 3, 1946, O. C. Mays and wife executed a deed to Dave Kibler conveying Lots 1, 2, 3, and 4 in Block 2, West Handley Addition, Tarrant County, Texas, said "property being located as 5800 Dallas Pike, West Handley and known as Harrow Court." On January 3, 1949, Dave Kibler and wife executed a deed to appellant, L. H. Stubbs, and wife, conveying "Lots 1, 2, 3 and 4 in Block No. 2, West Handley Addition to the City of Fort Worth, Tarrant County, Texas, and upon which is erected The Harrow Tourist Courts at 5800 East Lancaster Ave., and also being on U S Highway 80, Fort Worth, Texas."

On October 14, 1953, Kibler executed a quitclaim deed to Lee Stubbs as to the east one-half of Lot O, Block 2.

On February 13, 1953, O. C. Mays executed a quitclaim deed as to Lot O to J. Virgil Moore, the then record title owner of Lot O.

The trial court filed extensive findings of fact and conclusions of law, including findings that Andrus, Cameron and Harrow did not, during their terms of occupancy, claim or hold the part of Lot O in controversy adversely; that Harrow Court did not include any part of Lot O; that the deed from O. C. Mays to Dave Kibler did not convey the title to any part of Lot O and that it was not contemplated by the parties that such deed should pass title to any part of Lot O; that Hiett, during his occupancy, did not claim any part of Lot O. The court concluded as a matter of law that appellant did not prove limitation title to any part of Lot O, and that appellee did prove and does have record title to said lot.

Appellant attacks the finding that Andrus, Cameron and Harrow did not claim the property adversely as contrary to all the evidence, and attacks the finding that Hiett did not claim any part of Lot O, as being unsupported by competent evidence, and further that the court erred in holding, contrary to all the evidence, that the strip of Lot O involved was not a part of the "prop-

erty known as Harrow Court", intended to be conveyed by O. C. Mays to Dave Kibler.

It appears from the evidence that prior to 1936 Lot O was enclosed by fence with Lots 1, 2 and 3. The record does not reveal who built the fence or for what purpose. Later, the fence was removed except the section bisecting Lot O. During the period of Cameron's ownership of Lots 1, 2, 3 and 4, he erected tourist cabins on the lots. The rear of one of the cabins abuts on Lot O so closely that the eaves of the cabin extend several inches over Lot O. Cameron and subsequent owners of the tourist court mowed the grass on that part of Lot O in controversy and one of the owners set out hedges around that part of Lot O. No building, or part of a building, was erected on Lot O, with the exception of the overhanging eaves heretofore mentioned. Patrons of the tourist court were privileged to use the east portion of Lot O but the record does not show any extensive use except by one tenant several years ago.

If Mays did not convey Lot O to Kibler, it is immaterial whether or not the court's findings that Andrus, Cameron, Harrow and Hiett did not claim adversely are sustained by the evidence. According to appellant's claim, limitation title to the east part of Lot O matured in Cameron in 1937. If, contrary to the trial court's findings, Cameron did acquire title by limitation in 1937, title was vested in him as completely as could be done by deed. Moody v. Holcomb, 26 Te.c. 714. Therefore, if the deed from Mays to Kibler did not include the disputed portion of Lot O, said deed did not pass his title to said portion of Lot O. Leonard v. Ramsey, Tex.Civ.App., 71 S.W.2d 606; Webb v. Davant, Tex.Civ.App., 113 S.W.2d 926. Since the deed from Mays to Kibler was executed in 1946, appellant, assuming his possession since then has been adverse, has not been in possession of the property a sufficient length of time to support limitation title.

■ But, says the appellant, the words "known as Harrow Court" in the Mays to Kibler deed included that part of Lot O

used by the tourist court and the deed is ambiguous on its face, and the court should look to the circumstances of the sale and oral testimony for Mays' intention whether to convey only the enumerated lots or all the property known as Harrow Court. We think, under the rules announced in Bond v. Middleton, 137 Tex. 550, 155 S.W.2d 789, this is a case in which extrinsic evidence may be admitted to interpret properly the description and give effect to the true intention of the parties.

In addition to the deed, the court had before it the contract of sale entered into between O. C. Mays and Dave Kibler, dated September 20, 1946, two weeks prior to the deed in question. By the terms of the contract, Mays agreed to sell and Kibler agreed to buy "property known as Harrow Court, Lots 1, 2, 3 and 4 Tract or Block 2, West Handley, fronting 300 ft. on highway, located at 5800 Dallas Pike, Tarrant County, Texas." A plat included in the statement of facts shows that Lots 1 and 2 had a frontage of 100 feet each on the Dallas Pike and Lots 3 and 4 a frontage of 50 feet each on the Dallas Pike, thus the total footage was 300 feet, just as stipulated in the contract. The Mays to Kibler deed did not mention the number of front feet on the highway but in other respects contained the same description as the contract. Mays, called as a witness by appellant, was asked on direct examination why he did not include Lot O in the deed to Kibler. His answer was, "Well, I sold 1, 2, 3, and 4 and I kept O, 5 and 6 and four acres behind the court."

All the deeds offered by appellant down to Mays made reference to Lot O, while the Mays to Kibler deed was silent as to O. The testimony is also undisputed that none of appellant's predecessors ever paid taxes on Lot O, some testifying they thought it was a street. Although the record is not clear as to the basis of their opinions, most of the witnesses were of the opinion that Lot O was supposed to be a street.

Another circumstance to be considered by the trial court was the fact that all of

**804**

appellant's predecessors of the tourist court executed quitclaim deeds only as to Lot O except Hiett and Madden.

■ It was the position of Mays that the deed did not convey any part of Lot O, and he subsequently quitclaimed as to Lot O in a deed to J. Virgil Moore, the then record owner of said lot. His testimony was admissible as throwing light upon his intention at the time of the execution of the deed and as to whether Lot O was a part of Harrow Court. 14 Tex.Jur., p. 1052: Delta Land & Timber Co. v. Spiller, Tex.Civ.App., 216 S.W. 414.

■ The failure of appellant's predecessors to pay taxes on the disputed strip is not conclusive against their claim of limitation but is a circumstance to be considered by the trier of facts in determining whether or not said lot was considered as a part of the Harrow Court.

■ Hiett testified that he kept the grass cut on the east side of Lot O, partly on account of the fire hazard and partly on account of general appearances. Such testimony was admissible in determining whether or not the lot was considered a part of Harrow Court. Appellee testified that in a hearing before the City's Board of Adjustment, appellant Stubbs made the statement he did not have any claim on Lot O, that he objected to the erection of a building on such lot but did not claim it. Kibler, at one time, according to the witness Moore, stated he did not own or claim any part of Lot O. Cameron testified he gave a mere quitclaim deed to Lot O because he knew he did not have any title, that he never put any improvements on the strip because he knew he did not have title to it, he merely intended to use the strip until they opened it for a street.

The trial court could reasonably find from the evidence that the disputed strip was useful to and convenient for the owners of Harrow Court but was not a part of Harrow Court.

■ After a careful review of the record, we are unable to agree with appellant

that the record is conclusive against the trial court's finding "that Harrow Court did not include any part of Lot O." Conceding that Mays owned the east part of Lot O, he did not convey it to Kibler, and since he did not convey it to Kibler, Kibler could not, of course, convey to appellant, and the quitclaim deed from Kibler to Stubbs, dated October 14, 1953, had no effect and could pass no interest to appellant.

Appellant having failed to prove limitation title, the court's judgment denying him recovery was proper.

The judgment of the trial court is affirmed.